ORIGINAL

1   David Blair-Loy (SBN 229235)                          FILED
    Sean Riordan (SBN 255752)
2   ACLU FOUNDATION OF SAN DIEGO & IMPERIAL COUNTIES  2010 MAR 15  PM 2: 18
    P.O. Box 87131
3   San Diego, CA 92138-7131                      CLERK US DISTRICT COURT
    Telephone: (619) 398-4485                  SOUTHERN DISTRICT OF CALIFORNIA
4   Facsimile: (619) 232-0036
    Email: sriordan@aclusandiego.org            BY_____DEPUTY
5
    Attorneys for Plaintiff
6

7
                    UNITED STATES DISTRICT COURT
8
                  SOUTHERN DISTRICT OF CALIFORNIA
9
    AMERICAN CIVIL LIBERTIES UNION OF SAN    10-CV-0544 BEN        WVG
10  DIEGO & IMPERIAL COUNTIES,                  Case No.

11          Plaintiff,
                                          COMPLAINT FOR
12      v.                                DECLARATORY AND
                                          INJUNCTIVE RELIEF:  FAILURE
13  UNITED STATES DEPARTMENT OF           TO COMPLY WITH THE
    HOMELAND SECURITY;  UNITED STATES     FREEDOM OF INFORMATION
14  BUREAU OF IMMIGRATION AND CUSTOMS      ACT
    ENFORCEMENT,
15
            Defendants.
16

17

18                         INTRODUCTION

19      1.      On December 18, 2009, the American Civil Liberties Union of San Diego &

20  Imperial Counties ("ACLU-SDIC") submitted a request to the United States Bureau of

21  Immigration and Customs Enforcement ("ICE"), seeking disclosure of records relating to a

22  massive statewide immigration enforcement operation that ICE conducted in California earlier

23  that month ("Request").  ICE has still not substantively responded to the Request by stating

24  whether and when it will produce any requested records.

25      2.      ACLU-SDIC brings this civil action to compel ICE to respond to the Request,

26  perform an adequate search for records responsive to the Request, disclose all records, and all

27  portions of records, not clearly exempted from disclosure under FOIA, process the Request on an

28  expedited basis, waive any fees associated with the Request and comply with the other applicable

1   provisions of FOIA.

2                                   **THE PARTIES**

3          3.       Plaintiff ACLU-SDIC is a 501(c)(3) non-profit organization dedicated to the

4   defense of civil rights and civil liberties.  It has approximately 8,000 members and is a regional

5   affiliate of the national American Civil Liberties Union.  ACLU-SDIC is particularly concerned

6   with issues of immigration enforcement, privacy, and freedom of association, expression, and

7   religion.  ACLU-SDIC publishes a newsletter and maintains a website at www.aclusandiego.org

8   that disseminates information of public concern at no charge on civil liberties issues.  The office

9   of the ACLU-SDIC is located in San Diego, California, within the venue of this Court.

10         4.       Defendant ICE is an agency of the United States government within the meaning

11  of 5 U.S.C. § 552(f)(1).

12         5.       Defendant United States Department of Homeland Security is an agency of the

13  United States government within the meaning of 5 U.S.C. § 552(f)(1).  The Department of

14  Homeland Security is made up of several agencies, including ICE.

15                              **JURISDICTION AND VENUE**

16         6.       This Court has subject matter jurisdiction over the claims in this action pursuant to

17  28 U.S.C. § 1331 because they arise under the laws of the United States, in particular the

18  Freedom of Information Act ("FOIA") (5 U.S.C. § 552).  FOIA also contains a specific provision

19  providing for this Court's subject matter jurisdiction.  5 U.S.C. § 552(a)(4)(B).

20         7.       Venue is proper in this court pursuant to 28 U.S.C. § 1391(e) and/or 5 U.S.C. §

21  552(a)(4)(B).

22         8.       This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201

23  and 2202 and Federal Rule of Civil Procedure 57.

24         9.       This Court has the power to grant injunctive relief pursuant to 5 U.S.C. §

25  552(a)(4)(B) and Federal Rule of Civil Procedure 65.  It also has the power to issue any writ

26  necessary or appropriate in aid of its jurisdiction over this case pursuant to 28 U.S.C. § 1651.

27  //

28  //

## STATUTORY FRAMEWORK

10.     The Freedom of Information Act mandates disclosure of records held by a federal agency, in response to a request for such records by a member of the public, unless the records fall within certain narrow statutory exemptions.

11.     The basic purpose of FOIA is to enable the public to hold the government accountable for its actions, through transparency and public scrutiny of government operations and activities.  Through access to government information, FOIA helps the public better understand the government, thereby enabling a vibrant and functioning democracy.

12.     Any member of the public may request records of a government agency under FOIA.  An agency that receives a FOIA request must respond in writing to the requester within 20 business days after the receipt of such request.  5 U.S.C. § 552(a)(6)(A)(i).  In its response, the agency must inform the requester whether or not it intends to comply with the request, provide reasons for its determination, and inform the requester of her right to appeal the determination. *Id.*

13.     A FOIA requester is deemed to have exhausted his or her administrative remedies if the agency fails to comply with the statutory time limits for responding to a request.  5 U.S.C. § 552(a)(6)(C)(i).  At that point, the requester may immediately proceed to federal court and seek relief there. *Spannaus v. DOJ*, 824 F.2d 52, 58 (D.C. Cir. 1987).

14.     FOIA requires an agency to timely disclose all records responsive to a FOIA request that do not fall within nine narrowly-construed statutory exemptions.  5 U.S.C. § 552(a)(3)(A); § 552(b)(1)-(b)(9).

15.     FOIA also requires an agency to make a search reasonably calculated to uncover all records responsive to a FOIA request. *Zemansky v. Environmental Protection Agency*, 767 F.2d 569, 571 (9th Cir. 1985).

16.     Once a requester files a complaint, the District Court has jurisdiction to enjoin the agency from withholding records and to order the production of records that are subject to disclosure.  5 U.S.C. § 552(a)(4)(B).

17.     Documents shall be furnished without charge or at a reduced charge if disclosure

**COMPLAINT**

1  of the information is in the public interest because it is likely to contribute significantly to public

2  understanding of the operations or activities of the government and is not primarily in the

3  commercial interest of the requester.  5 U.S.C. § 552(a)(4)(A)(iii).

4      18.    FOIA provides that "fees shall be limited to reasonable standard charges for

5  document duplication when records are not sought for commercial use and the request is made

6  by....a representative of the news media," and 6 C.F.R. § 5.11(d)(1) provides that search fees

7  shall not be charged to members of the news media.  A representative of the news media does not

8  have to be a member of the traditional news media; it is "any person or entity that gathers

9  information of potential interest to a segment of the public, uses its editorial skills to turn the raw

10  materials into a distinct work, and distributes that work to an audience."  5 U.S.C. §

11  552(a)(4)(A)(ii).

12      19.    FOIA also requires an agency to produce records on an expedited basis when there

13  is a "compelling need" for expedition.  5 U.S.C. § 552(a)(6)(E)(i).  A compelling need is

14  established if a person "primarily engaged in disseminating information" shows an "urgency to

15  inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. §

16  552(a)(6)(E)(v)(ii); 6 C.F.R. § 5.5(d).

17      20.    A FOIA requestor need not exhaust administrative remedies before bringing a

18  complaint alleging that an agency improperly denied a request for expedited processing. 5 U.S.C.

19  § 552(a)(6)(E)(iii); *ACLU v. DOJ*, 321 F. Supp. 2d 24, 28-29 (D.D.C. 2004).

20      21.    Any requirement to exhaust administrative remedies with respect to the adequacy

21  of a search, disclosure of documents, or waiver or limitation of fees is excused by an agency's

22  failure to timely and properly address these issues.  5 U.S.C. § 552(a)(6)(C)(i); *Spannaus v. DOJ*,

23  824 F.2d 52, 58 (D.C. Cir. 1987).

24  **STATEMENT OF FACTS**

25      22.    On December 18, 2009, Plaintiff mailed the Request to ICE.  A copy of the

26  Request is attached as Exhibit A to this complaint and is incorporated by reference.

27      23.    Plaintiff's request was prompted by ICE's massive enforcement operation that

28  targeted alleged "criminal aliens" across the state of California from December 8 through

1   December 10, 2009.  In a December 11, 2009 news release, ICE reported that it had arrested 286

2   aliens in California – 71 of them in San Diego and Imperial Counties – during a "three day

3   enforcement surge" that concluded on December 10, 2009 (hereafter, "California Enforcement

4   Operation").  ICE touted this as its "biggest operation targeting at large criminal aliens."  ICE

5   also reported that more than 80 percent of the "criminal aliens" arrested had prior convictions for

6   serious or violent crimes.  The news release is available at

7   http://www.ice.gov/pi/nr/0912/091211losangeles.htm (last accessed on March 5, 2010), and is

8   attached as Exhibit B.

9          24.     ICE's enforcement operations ostensibly targeting "criminal aliens" have

10  historically resulted in a disproportionate number of arrests of individuals without any criminal

11  records at all and of individuals with only minor criminal convictions.  For example, despite a

12  mandate to arrest dangerous fugitives, 73 percent of the individuals apprehended by ICE's

13  fugitive operations teams between 2003 and February 2008 had no criminal conviction.  Margot

14  Mendelson, Shayna Strom & Michael Wishnie, *Collateral Damage: An Examination of ICE's*

15  *Fugitive Operations Program*, Migration Policy Institute 1 (2009), *available at*

16  http://www.migrationpolicy.org/pubs/NFOP_Feb09.pdf (last accessed on March 8, 2010).

17  Though ICE's budget for fugitive operations grew from $9 million in 2003 to over $183 million

18  in 2008, the proportion of aliens with a criminal conviction arrested by fugitive operations teams

19  dropped from 32 percent in 2003 to nine percent in 2007.  *Id.*  Despite these figures, then-ICE

20  chief Julie Myers stated in August 2008 that the targets of fugitive operations teams were

21  individuals with a criminal conviction.  *Id.* at 12.  With respect to ICE criminal alien enforcement

22  program, there has been "a significant disparity between the program's stated goals and its actual

23  results."  *Id.* at 18.  Against this historical backdrop, there are serious questions of public concern

24  about the manner in which ICE engages in immigration enforcement ostensibly targeting criminal

25  aliens.

26          25.     ACLU-SDIC's Request seeks information and documents relating to a number of

27  questions of serious public concern regarding the California Enforcement Operation.  Were the

28  individuals arrested during the California Enforcement Operation really "criminal aliens"?  What

1  crimes had they committed?  Were the crimes serious?  How long ago did the crimes occur?

2  How did ICE decide who to target or otherwise arrest through and during the California

3  Enforcement Operation?  Were all the persons arrested as a result of the California Enforcement

4  Operation specifically targeted, or were other individuals arrested as well?  Did state, county, city

5  or other sub-national agencies cooperate, participate, or know about the California Enforcement

6  Operation?  What proportion of the individuals arrested had a final prior order of removal?

7  Plaintiff's Request was carefully targeted to uncover information from ICE about the California

8  Enforcement Operation in order to answer these questions.  FOIA was enacted specifically to give

9  the public access to just such information.

10      26.    Plaintiff sought expedited processing of its Request.  It explained that its Request

11  implicated matters of urgent public concern for two reasons.  First, government enforcement

12  activity on the scale of the California Enforcement Operation may not be tailored to achieve its

13  purported goals of arresting dangerous criminal aliens.  Second, such enforcement activity may

14  infringe upon the public's freedoms of privacy and security against unreasonable searches and

15  seizures which are guaranteed by the First, Fourth and Fifth Amendments to the United States

16  Constitution.  There is an urgency to expose any misuse of government resources and potential

17  constitutional violations so that they immediately cease.

18      27.    In connection with its request for expedited processing, Plaintiff also explained

19  that it is primarily engaged in disseminating information.  For example, the ACLU-SDIC sends

20  out newsletters, issues news briefings, and maintains a website that publishes information of

21  public concern at no charge.

22      28.    Plaintiff explained that the records covered by its Request relate to a matter of

23  widespread and exceptional media interest, as evidenced by articles covering the California

24  Enforcement Operation in all the major national newspapers, including the *Los Angeles Times*,

25  the *New York Times*, the *Wall Street Journal*, and the *Washington Post*.  Plaintiff noted that a

26  number of regional newspapers also covered the California Enforcement Operation, and similar

27  incidents have been of intense public concern for years.

28  //

29.     Plaintiff's request also sought a waiver of search and review fees because it is not seeking the information for a commercial purpose and is a non-profit that intends to disseminate the information gathered by the Request to the public at no cost.  In addition, Plaintiff is a representative of the news media because it gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

30.     Finally, Plaintiff's request sought a waiver or reduction of all costs because the information request was not for commercial use, will be disseminated to the public at no cost, and disclosure of the information is in the public interest and may contribute to public understanding of ICE policies and practices regarding immigration enforcement.

31.     When ACLU-SDIC counsel telephoned the ICE FOIA office on Friday, January 29, 2010, he was informed ICE received the Request on December 29, 2009.  ICE did not provide any information about whether and when it would produce any requested records.

32.     On January 8, 2010, ICE sent a letter addressing *only* the requests for a waiver of fees and the expedited processing of the FOIA request.  The letter is attached as Exhibit C.[1]  The letter informed ACLU-SDIC that the fee waiver request would be held in abeyance, and denied the request for expedited processing.  The letter informed ACLU-SDIC that it might appeal the decision denying expedited processing and holding the fee waiver in abeyance.  However, the letter did not indicate whether and when the agency would definitively rule on the fee waiver issue or comply with the FOIA Request itself.

33.     On March 8, 2010, ACLU-SDIC administratively appealed ICE's denial of expedited processing and failure to decide its request for a fee waiver, though this administrative appeal was precautionary and does not constitute a concession that exhaustion of administrative remedies on those issues is necessary.  ACLU-SDIC noted that there was urgency to inform the public of the government's immigration enforcement activities, particularly in light of ongoing debates about national immigration reform and the proper allocation of enforcement resources in

---

[1] ICE's letter states that our FOIA request was dated May 2, 2008.  This is clearly a clerical error.

COMPLAINT

1    such a scheme for reform.  The administrative appeal is attached as Exhibit D and incorporated by

2    reference.  ICE has not ruled on the administrative appeal.

3         34.     ICE has not substantively responded to the Request by stating whether and when it

4    will produce any requested records, even though the 20 business day statutory deadline for such a

5    response fell on January 28, 2010.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

**CLAIMS FOR RELIEF**

**First Count**

**Violation of FOIA for Improper Denial of Request for Expedited Processing**

9         35.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every

10   allegation contained in the above paragraphs.

11        36.     Defendants' denial of Plaintiff's request for expedited processing of the Request

12   violates 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. § 5.5(d).

**Second Count**

**Violation of FOIA for Failure to Respond to Request for Records**

15        37.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every

16   allegation contained in the above paragraphs.

17        38.     Defendants' failure to respond to Plaintiff's Request violates 5 U.S.C. §

18   552(a)(6)(A)(i).

**Third Count**

**Violation of FOIA for Failure to Adequately Search for and Promptly Release Records**

21        39.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every

22   allegation contained in the above paragraphs.

23        40.     Defendants failed to make an adequate search for records responsive to Plaintiff's

24   FOIA request and to promptly release the responsive records sought by Plaintiff, in violation of 5

25   U.S.C. § 552(a)(3)(A)-(D).

**Fourth Count**

**Violation of FOIA for Improper Disposition of Fee Limitation or Waiver Request**

28        41.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every

8

**COMPLAINT**

1  allegation contained in the above paragraphs.

2      42.    Defendants failed to grant Plaintiff's fee limitation or waiver request in violation

3  of 5 U.S.C. § 552(a)(4)(A)(ii)(II); § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(d)(l).

**PRAYER FOR RELIEF**

5  Wherefore, Plaintiff prays that this Court:

6      a)    Order Defendants to process Plaintiff's FOIA request immediately and

7  expeditiously and, upon such processing, to make available the requested records to Plaintiff.

8      b)    Declare that Defendants' failure to disclose the records requested by Plaintiff is

9  unlawful;

10     c)    Grant Plaintiff's request for a fee waiver or limitation;

11     d)    Award Plaintiff costs and reasonable attorney fees incurred in this action pursuant

12 to 5 U.S.C. § 552(a)(4)(E);

13     e)    Grant such other relief as the Court may deem just and proper.

14

15 Dated:  March 15 , 2010

16                                      SEAN RIORDAN
                                        Attorney for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

9                                              **COMPLAINT**

# EXHIBIT A





December 18, 2009

U.S. Immigration and Customs Enforcement
800 North Capitol Street, N.W.
5th Floor, Suite 585
Washington, D.C. 20528
FOIA Officer: Catrina Pavlik-Keenan

**Re:    Request Under Freedom of Information Act and Privacy Act**

Dear FOIA Officer:

This letter constitutes a request for records made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and/or the Privacy Act, 5 U.S.C. § 552a, by and on behalf of the requestor named below ("the Requestor"). This request is made to U.S. Immigration and Customs Enforcement ("ICE").

### REQUESTOR(S)

American Civil Liberties Union of San Diego & Imperial Counties ("ACLU-SDIC") is a non-profit organization dedicated to the defense of civil rights and civil liberties. ACLU-SDIC has approximately 8,000 members and is a regional affiliate of the national American Civil Liberties Union. ACLU-SDIC is particularly concerned with issues of immigration enforcement, privacy, and freedom of association, expression, and religion. ACLU-SDIC publishes a newsletter and maintains a website at www.aclusandiego.org that disseminates information of public concern at no charge on issues including but not limited to the foregoing matters.

### BACKGROUND

On December 11, 2009, ICE reported that it had arrested 286 aliens in California – 71 of them in San Diego and Imperial Counties – during a "three day enforcement surge" that concluded on December 10, 2009 (hereafter, "California Enforcement Operation"). ICE touted this as its "biggest operation targeting at large criminal aliens." ICE also reported that more than 80 percent of the "criminal aliens" arrested had prior convictions for serious or violent crimes.[1]

---

[1] ICE News Release, 286 arrested in ICE's largest ever enforcement surge targeting criminal aliens (December 11, 2009), *available at* http://www.ice.gov/pi/nr/0912/091211losangeles.htm.

## REQUEST FOR RECORDS

The Requestor seeks disclosure of any records created from January 1, 2009 to the present, which were prepared, received, transmitted, collected and/or maintained by ICE relating or referring to the following:

1.      Any records describing, documenting, relating or referring to the California Enforcement Operation.

2.      Any records describing, documenting, relating or referring to any alien targeted by, or otherwise encountered during, the California Enforcement Operation, including, but not limited to any records describing, documenting, relating or referring to (a) the criminal background of each alien so targeted or encountered, including, but not limited to, the particular crime(s) each alien so targeted or encountered is alleged to have committed; (b) the date of commission of any crime(s) each alien so targeted or encountered is alleged to have committed; and (c) the date of conviction or other disposition of any crime(s) each alien so targeted or encountered is alleged to have committed;

3.      Any records describing, documenting, relating or referring to state, county, city or other sub-national agencies' cooperation, participation or knowledge with respect to the California Enforcement Operation, including, but not limited to, records documenting, relating or referring to the San Diego County Probation Department's cooperation, participation or knowledge with respect to the California Enforcement Operation.

4.      Any records describing, documenting, relating or referring to any individual who was arrested during the California Enforcement Operation, though any such individual was not specified initially as a target of the California Enforcement Operation.  Such individual would be referred to colloquially as a "collateral arrest."

5.      Any records describing, documenting, relating or referring to the number, proportion, or percentage of individuals arrested during the California Enforcement Operation who had a final prior order of removal.

6.      Any records describing, documenting, relating or referring to how ICE decided who to target or otherwise arrest through and during the California Enforcement Operation.

## REQUEST FOR EXPEDITED PROCESSING

Expedited processing is warranted because there is "an urgency to inform the public about an actual or alleged federal government activity" by organizations

Freedom of Information Act Request
December 18, 2009
Page 3 of 6

"primarily engaged in disseminating information." 6 C.F.R. § 5.5(d)(1)(ii); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II).

This request implicates matters of urgent public concern, as discussed above. Any government enforcement activity of the scale of the California Enforcement Operation raises concerns about the manner of its implementation and the tailoring of its targeting. Such government activity may infringe upon the public's freedoms of privacy and security against unreasonable searches and seizures which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Moreover, such government activity may not be tailored to achieve its purported goals. Requests for information bearing upon potential Constitutional violations require an immediate response to cease present violations, prevent future violations, prevent any chilling effect on public participation in potentially targeted groups and/or activities, and ensure that governmental policies are being faithfully implemented.

The Requestor is "primarily engaged in disseminating information" under the statute and regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(d)(1)(ii). Dissemination of information to the public is a critical and substantial component of the Requestor's mission and work.

ACLU-SDIC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU-SDIC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclusandiego.org/. Front and center on the ACLU-SDIC website homepage is a section for "Latest News," demonstrating the importance to ACLU-SDIC of disseminating information to the public. The website also contain archives of press releases and other documents demonstrating the thorough extent to which ACLU-SDIC disseminates information to the public on numerous issues: http://www.aclusandiego.org/news.php?type=news_archive.

ACLU-SDIC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information: www.aclu.org.

Therefore, the Requestor is primarily engaged in disseminating information. *See American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information").

Freedom of Information Act Request
December 18, 2009
Page 4 of 6

Expedited processing is also warranted because there is "a particular urgency to inform the public about the government activity involved in the request." 6 C.F.R. § 5.5(d)(3). The instant request relates to possible violations of Constitutional rights by federal law enforcement and possibly overbroad enforcement measures.

The exceptional media interest in this issue is reflected in widespread news coverage. All of the major national newspapers covered the California Enforcement Operation. *See* Anna Gorman, *Illegal immigrants with records arrested*, Los Angeles Times (December 12, 2009); Randal C. Archibold, *Immigration Officials Arrest 300 in California*, New York Times (December 12, 2009); Miriam Jordan, *Feds Target Illegal Immigrants with Criminal Pasts*, Wall Street Journal (December 12, 2009); Amy Taxin, *Immigration Sweep Nets 280 with Criminal Records*, Washington Post (December 11, 2009); Daniel B. Wood, *California sweep targets illegal immigrants with criminal records*, Christian Science Monitor (December 11, 2009). A number of regional newspapers covered the story as well. *See* Ken McLaughlin, *Immigration agents arrest 280 with criminal convictions in massive sweep*, San Jose Mercury News (December 11, 2009); Melissa Pinion-Whitt, *ICE sweep catches 300, including convicted sex offender*, San Bernadino County Sun (December 11, 2009); Ben Conery, *Arrest of 286 illegals focuses on criminals*, Washington Times (December 11, 2009); Cindy Carcamo, *Immigration officials arrest 286 in state sweep*, Orange County Register (December 12, 2009). Similar incidents have been of intense public concern for years. *See, e.g.,* Bishop Gabino Zavala and Rev. Nelson Johnson, *U.S. must stop workplace raids, enact immigration reform*, Chicago Sun-Times (December 13, 2008); Damien Cave and Yolanne Almanzar, *Tactics Used In U.S. Raids Draw Claims Of Brutality*, New York Times (December 10, 2008).

Apart from media interest, there is urgency to inform the public about an actual or alleged federal government activity. The governmental activity at issue – sweeping up hundreds of individuals based on their alleged criminal background – potentially affects even law-abiding U.S. Citizens and residents. Under any circumstances, the public has an urgent need to confirm or dispel concerns that the government is violating fundamental rights or acting beyond the scope of legitimate enforcement objectives. Accordingly, expedited processing is warranted.

## LIMITATION OR WAIVER OF SEARCH AND REVIEW FEES

We request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by … a representative of the news media …") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to "representatives of the news media"). The information sought in this request is not sought for a commercial purpose. The Requestor is a non-profit organization that intends to disseminate the information gathered by this Request to the public at no cost.

Freedom of Information Act Request
December 18, 2009
Page 5 of 6

The "term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). The statutory definition does not require that the requester is a member of the traditional media. As long as the requester meets the definition in any aspect of its work, it qualifies for limitation of fees under this section of the statute.

For the reasons stated above with respect to expedited processing, ACLU-SDIC qualifies as a "representative of the news media" under the statutory definition, because it routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Accordingly, any fees charged must be limited to duplication costs.

## WAIVER OR REDUCTION OF ALL COSTS

We request a waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"); *see also* 6 CFR § 5.11(k).

The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987). The Requestors need not demonstrate that the records would contain evidence of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003).

Disclosure of the information sought is in the public interest and will contribute significantly to public understanding of governmental policies and practices of immigration enforcement. As shown by the news reporting cited above, these issues are of intense public concern. The requested records relate directly to operations or activities of the government that potentially impact or infringe fundamental rights and freedoms. The records are not sought for commercial use, and the Requestors plan to disseminate the information disclosed through print and other media to the public at no cost, and through meetings with members and affected communities. As demonstrated above, the Requestors have both the intent and ability to convey any information obtained through this request to the public.

The Requestors state "with reasonable specificity that [their] request pertains to operations of the government," and "the informative value of a request depends not on

Freedom of Information Act Request
December 18, 2009
Page 6 of 6

there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006).

In the event a waiver or reduction of costs is denied, please notify me in advance if the anticipated costs exceed $100.

## CONCLUSION

If this request is denied in whole or part, please justify all deletions by reference to specific FOIA exemptions. *We expect you to release all segregable portions of otherwise exempt material.* For example, we expect you to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and release any otherwise disclosable records, or portions of records, as redacted.

We reserve the right to appeal a decision to withhold any information, or to deny expedited processing or a waiver of fees. We look forward to your reply to the request for expedited processing within ten (10) calendar days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Notwithstanding your decision on the matter of expedited processing, we look forward to your reply to the records request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I).

If you have questions, please contact Sean Riordan at (619) 398-4485 or via e-mail at sriordan@aclusandiego.org. Thank you in advance for your timely consideration of this request. Please furnish records as soon as they are identified to the undersigned at:

ACLU of San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138

I certify that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Sean Riordan
Staff Attorney
ACLU of San Diego & Imperial Counties

# EXHIBIT B

Skip Navigation

 **U.S. Immigration
and Customs
Enforcement**

## U.S. Immigration and Customs Enforcement

## News Releases

December 11, 2009 ⊙ SHARE

## 286 arrested in ICE's largest ever enforcement surge targeting criminal aliens
### *2 convicted rapists and armed robber among those captured in 3-day California operation*

LOS ANGELES - Nearly 300 foreign nationals with criminal records have been removed from the United States or are facing deportation following a three-day enforcement surge in California, making it the biggest operation targeting at large criminal aliens ever carried out by U.S. Immigration and Customs Enforcement (ICE).

During the operation, which concluded late Thursday, ICE officers located and arrested a total of 280 criminal aliens statewide, along with six non-criminal aliens who had final orders of deportation. More than 80 percent of the criminal aliens taken into custody had prior convictions for serious or violent crimes, such as rape by force, armed robbery and assault with a deadly weapon. Also included in the group are 30 convicted sex offenders, many whose crimes involved sexual assaults on children. Of those arrested, at least 100 have already been removed from the country.

At a news conference here Friday morning, Homeland Security Assistant Secretary for ICE John Morton announced the results of the special operation, which involved more than 400 agents and officers from ICE, the U.S. Marshals Service, as well as several other state and local agencies. Assistant Secretary Morton cited the operation as another example of the vital role multi-agency cooperation and targeted immigration enforcement play in protecting our communities.

"Enhancing public safety is at the core of ICE's mission," said Department of Homeland Security Assistant Secretary John Morton, who oversees ICE. "Legal immigration is an important part of our country's history and the American dream exists for many immigrants. However, that dream involves playing by the rules and those who break our criminal laws will be removed from the

country. Sadly, many of the people victimized by aliens who commit crimes are other members of the immigrant community, who are following the rules."

Northern California accounted for the largest number of arrests during the operation where a total of 119 criminal aliens were taken into custody. The Los Angeles-area recorded the next highest number of arrests with 96, followed by San Diego and Imperial counties collectively with 71. The arrestees, 257 men and 29 women, represent more than 30 different nations, including countries in Latin America, Europe, the Middle East and Africa.

Because of their serious criminal histories and prior immigration arrest records, at least 17 of those arrested during the enforcement surge will face further federal prosecution for reentering the country illegally after a formal deportation. A conviction for felony re-entry carries a penalty of up to 20 years in prison.

Among the arrestees being federally prosecuted is a previously deported Salvadoran national with ties to the Mid-city street gang whose criminal history includes a prior conviction for first degree robbery. Ulises Vazuiz Arucha, 37, was taken into custody by ICE officers Dec. 8 in Reseda, Calif. Also facing felony re-entry charges is Ignacio Camacho-Madrigal, 43, a Mexican national formerly convicted of committing a lewd act on a child under 14. Camacho-Madrigal was arrested by ICE Dec. 8 in Rialto, Calif.

The foreign nationals detained during the operation who are not being criminally prosecuted will be processed administratively for removal from the United States. Those who have outstanding orders of deportation, or who returned to the United States illegally after being deported, are subject to immediate removal from the country. The remaining aliens are in ICE custody awaiting a hearing before an immigration judge, or pending travel arrangements for removal in the near future.

This week's special enforcement action was spearheaded by ICE's Fugitive Operations Program, which is responsible for locating, arresting, and removing at large criminal aliens and immigration fugitives - aliens who have ignored final orders of deportation handed down by the nation's immigration courts. ICE's Fugitive Operations Teams (FOTs) give top priority to cases involving aliens who pose a threat to national security and public safety, including members of transnational street gangs and child sex offenders.

Last year, ICE's 104 FOTs nationwide made 35,094 arrests. More than 31,000 of those arrests, or nearly 89 percent, involved immigration fugitives and aliens with prior criminal convictions. Criminal aliens specifically accounted for approximately 45 percent of the overall total, including more than 3,600 individuals with prior convictions for violent crimes, such as murder and assault.

The officers who conducted this week's special operation received substantial assistance from ICE's Fugitive Operations Support Center (FOSC) located in South Burlington, Vermont. The FOSC conducted exhaustive database checks on the targeted cases to help ensure the viability of the leads and accuracy of the criminal histories. The FOSC was established in 2006 to improve the integrity of the data available on at large criminal aliens and immigration fugitives nationwide. Since its inception, the FOSC has forwarded more than 150,000 case leads to ICE enforcement personnel in the field.

Case 3:10-cv-00544-BEN-WVG  Document 1  Filed 03/15/10  PageID 20;  Page 20 of 32

ICE's Fugitive Operations Program is just one facet of the Department of Homeland Security's broader strategy to heighten the federal government's effectiveness at identifying and removing dangerous criminal aliens from the United States. Other initiatives that figure prominently in this effort are the Criminal Alien Program, Secure Communities and the agency's partnerships with state and local law enforcement agencies under 287(g).

Largely as a result of these initiatives, ICE removed a total of 136,126 criminal aliens from the United States last year, a record number.

-- ICE --

U.S. Immigration and Customs Enforcement (ICE) is the largest investigative arm of the Department of Homeland Security.

ICE comprises four integrated divisions that form a 21st century law enforcement agency with broad responsibilities for a number of key homeland security priorities. For more information, visit www.ICE.gov. To report suspicious activity, call 1-866-347-2423.

Last Modified: Monday, December 14, 2009

# EXHIBIT C

FEB 0 5 2010



U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

January 8, 2010

Mr. Sean Riordan
ACLU
P.O. Box 87131
San Diego, CA   92138

**RE: FOIA Case Number 2010-FOIA-1926**

Dear Mr. Riordan:

This letter responds to your requests for a waiver of fees and the expedited processing of your
Freedom of Information Act (FOIA) request dated May 2, 2008.  You have requested any records
describing, documents, relating or referring to the California Enforcement Operation

As it relates to your fee waiver request, your request will be held in abeyance pending the
quantification of responsive records.  The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth
six factors to examine in determining whether the applicable legal standard for a fee waiver has
been met:  (1) Whether the subject of the requested records concerns "the operations or activities
of the government;" (2) Whether the disclosure is "likely to contribute" to an understanding of
government operations or activities; (3) Whether disclosure of the requested information will
contribute to the understanding of the public at large, as opposed to the individual understanding
of the requestor or a narrow segment of interested persons; (4) Whether the contribution to public
understanding of government operations or activities will be "significant;" (5) Whether the
requester has a commercial interest that would be furthered by the requested disclosure; and (6)
Whether the magnitude of any identified commercial interest to the requestor is sufficiently large
in comparison with the public interest in disclosure, that disclosure is primarily in the commercial
interest of the requestor.  If any responsive records are located, we will consider these factors in
our evaluation of your request for a fee waiver.

Immigration and Customs Enforcement (ICE) evaluates requests for expedited processing based
upon the legal standards set forth in the Electronic Freedom of Information Act Amendments of
1996 as incorporated into the Department of Homeland Security's Freedom of Information Act
regulations[1].  These regulations establish two factors to examine in determining whether the
applicable legal standard for expedited processing has been met.  I have considered the following
factors in my evaluation of your request for expedited processing: (1) whether the lack of an
expedited treatment could reasonably be expected to pose an imminent threat to the life or
physical safety of an individual; and (2) if there is an urgency to inform the public about an actual
or alleged federal government activity, if the request is made by a person primarily engaged in
disseminating information.

Upon review of your request and a careful consideration of the factors listed above, I have
determined to deny your request for expedited processing.

---

[1] 6 CFR § 5.5(d).

www.ice.gov

The undersigned is the person responsible for this determination.  You may appeal this finding by writing to the Associate General Counsel (General Law), Department of Homeland Security, FOIA Appeals, Washington, DC 20528, within 60 days from the date of this determination.  It should contain any information and state, to the extent possible, the reasons why you believe the initial determination should be reversed and the envelope in which the appeal is mailed in should be prominently marked "FOIA Appeal."  The Privacy Office's determination will be administratively final.

If you have any questions pertaining to your request, please contact the FOIA Office at (202) 732-0300.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

# EXHIBIT D





PO Box 87131
San Diego, CA  92138-7131
T/ 619-232-2121
F/ 619-232-0036
www.aclusandiego.org

March 8, 2010

Associate General Counsel (General Law)
Department of Homeland Security
FOIA Appeals
Washington, DC 20528

Re:     **Freedom of Information Appeal**
        **FOIA Case Number 2010-FOIA-1926**

Dear Sir or Madam:

This letter is written to file an administrative appeal from the determination to deny our request for expedited processing and to hold in abeyance our fee waiver request, with respect to the above-referenced FOIA request ("Request"). Catrina M. Pavlik-Keenan asserted these determinations in a letter dated January 8, 2009. The Request seeks information about ICE's massive statewide enforcement operation conducted in California from December 8 to December 10, 2009 ("California Enforcement Operation"). A copy of Ms. Pavlik-Keenan's denial letter and the original Request are enclosed.

**A. Expedited Processing is Warranted**

Ms. Pavlik-Keenan does not explain why she denied our request for expedited processing. Regardless of her reasons, expedited processing is clearly warranted under the circumstances. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(d) (Expedited processing will be granted where there is "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."). There is "urgency to inform the public" about California Enforcement Operation given the troubling questions about its actual scope, the extensive media interest in its operation, and ongoing congressional debates on immigration

Freedom of Information Appeal
March 8, 2010
Page 2 of 6

reform. The requestor, the ACLU of San Diego & Imperial Counties ("ACLU-SDIC"), is "primarily engaged in information dissemination." Ms. Pavlik-Keenan's determination to deny expedited processing should accordingly be overturned.

### 1. Urgency to inform the public

The Request became all the more urgent with the introduction of legislation seeking comprehensive immigration reform, which has a substantial enforcement component. *See* Randall C. Archibold, "New Immigration Bill Is Introduced in House," N.Y. Times (December 16, 2009). The Obama Administration has made clear that a national debate on comprehensive immigration reform is imminent. *See* Peter Nicholas, *Obama looking to give new life to immigration reform*, L.A. Times (March 4, 2010) (indicating Obama administration's push for immigration reform in 2010); Dan Nowicki, *Clock ticks on Congress' bold agenda*, The Arizona Republic (January 17, 2009) (quoting Secretary of Homeland Security Janet Napolitano as saying "the president is very intent on this being part of the 2010 agenda"). Given that legislation on immigration reform will soon be fully considered and debated, and that immigration enforcement will be central to that debate, there is particular urgency for expedited processing of the Request. *See Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding urgency element met because of the upcoming expiration of special provisions of the Voting Rights Act); *ACLU v. Dep't of Justice,* 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (finding exigency because of the "ongoing debate regarding the renewal and/or amendment of the Patriot Act"); *contrast Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (no exigency where no "imminent action" in ongoing debate on national immigration policy).

Moreover, the Request indicated that the public has an urgent need to confirm or dispel concerns that the government violated fundamental rights or acted beyond the scope of legitimate enforcement objectives in the California Enforcement Operation. There has been widespread reporting and concern over the manner in which ICE engages in immigration enforcement. For example, a 2009 report found that 73% of individuals arrested by ICE's fugitive operations teams – which apparently participated in the California Enforcement Operation – between 2003 and 2008 didn't have any criminal record, despite the fact that ICE officials stated they were only targeting criminal aliens. Margot Mendelson, Shayna Strom & Michael Wishnie, *Collateral Damage: An Examination of ICE's Fugitive Operations Program*, Migration Policy Institute (2009). Another report found that ICE agents frequently relied on ruses and other trickery to apprehend purported fugitives, tactics that may seriously erode community confidence in ICE and other institutions, including churches and other government agencies. Jacqueline Stevens, *ICE Agents' Ruse Operations*, The Nation (December 17, 2009). The public has an urgent need to know whether ICE is in fact targeting and apprehending dangerous criminals, or continues to misallocate resources to go after individuals who have either very minor or very old criminal convictions.

Freedom of Information Appeal
March 8, 2010
Page 3 of 6

The Request also cited the numerous news reports indicating the extensive media interest in the California Enforcement Operation, including articles in every major national newspaper. *See* Anna Gorman, *Illegal immigrants with records arrested*, Los Angeles Times (December 12, 2009); Randal C. Archibold, *Immigration Officials Arrest 300 in California*, New York Times (December 12, 2009); Miriam Jordan, *Feds Target Illegal Immigrants with Criminal Pasts*, Wall Street Journal (December 12, 2009); Amy Taxin, *Immigration Sweep Nets 280 with Criminal Records*, Washington Post (December 11, 2009); Daniel B. Wood, *California sweep targets illegal immigrants with criminal records,* Christian Science Monitor (December 11, 2009). A number of regional newspapers covered the story as well. *See* Ken McLaughlin, *Immigration agents arrest 280 with criminal convictions in massive sweep*, San Jose Mercury News (December 11, 2009); Melissa Pinion-Whitt, *ICE sweep catches 300, including convicted sex offender*, San Bernadino County Sun (December 11, 2009); Ben Conery, *Arrest of 286 illegals focuses on criminals*, Washington Times (December 11, 2009); Cindy Carcamo, *Immigration officials arrest 286 in state sweep*, Orange County Register (December 12, 2009). Similar incidents have been of intense public concern for years. *See, e.g.,* Bishop Gabino Zavala and Rev. Nelson Johnson, *U.S. must stop workplace raids, enact immigration reform*, Chicago Sun-Times (December 13, 2008); Damien Cave and Yolanne Almanzar, *Tactics Used In U.S. Raids Draw Claims Of Brutality*, New York Times (December 10, 2008). The extensive media interest in the California Enforcement Operation demonstrates that there is a public urgency to reveal information on that subject. *See ACLU v. DOD*, 2006 WL 1469418, at *7-8 (N.D. Cal. May 25, 2006) ("extensive media interest usually is a fact supporting not negating urgency").

## 2.  Dissemination of information

The Request also made clear that ACLU-SDIC "disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials." ACLU-SDIC also "disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclusandiego.org/." Front and center on the homepage of that website is a section for "Latest News," demonstrating the importance to ACLU of disseminating information to the public. The website also contains an archive of press releases and other documents demonstrating the thorough extent to which ACLU-SDIC disseminates information to the public on numerous issues. See: http://www. aclusandiego.org/news.php?type=news_archive.

In addition, as noted in the Request, this ACLU affiliate "shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information."

Therefore, ACLU-SCIC is primarily engaged in disseminating information. *See American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information").

### B. Fee Waiver Determinations Should be Made on the Face of the Request, not Held in Abeyance Pending a Determination on the Volume of Records to be Released

"A fee waiver request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver," not the contents of requested records. *Carney v. Department of Justice*, 19 F.3d 807, 815 (2d Cir. 1994). It is necessary to decide the fee waiver issue before searching for responsive records. The refusal to rule on a fee waiver before a search for records has been conducted wrongly forces a qualified requester either to accept a potentially incomplete two-hour search or pay substantial search fees that must be waived as a matter of law. If "the request is for records that should be disclosed in the public interest, the agency should not be allowed to charge for searching the records, because the requester is acting in the public interest by attempting to obtain the records." *Id.*

The fee waiver decision does not depend on the volume and nature of responsive records. First, the volume of responsive records is irrelevant. The "substantive contents of even a single document may substantially enrich the public domain and justify a fee waiver." *Project on Military Procurement v. Department of Navy*, 710 F. Supp. 362, 366 (D.D.C. 1989).

Second, the nature of responsive records is also irrelevant. It makes no sense to condition a fee waiver on the nature of the records, as the decision on fee waiver logically precedes the question of what the records contain or whether they should be disclosed. Indeed, courts routinely decide fee waiver issues independently of disclosure issues.

Instead, a requester need only state "with reasonable specificity that its request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006).

The requester need not demonstrate that the records would contain evidence of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the

Freedom of Information Appeal
March 8, 2010
Page 5 of 6

government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314
(D.C. Cir. 2003) ("the question here is not whether Rossotti had such a conflict, but
whether disclosure of the requested documents is likely to contribute to public
understanding of IRS operations – a goal that disclosure will promote regardless of what
the documents reveal. Contrary to the implications of the government's argument, the
American people have as much interest in knowing that key IRS decisions are free from
the taint of conflict of interest as they have in discovering that they are not.").

Moreover, an agency cannot condition a fee waiver on anticipated redaction or
withholding of requested records. Such "a maneuver clearly places the cart before the
horse requiring the Court to pass upon the validity of withholding documents before the
agency decides the documents are to be withheld. Allowing a fee waiver denial on such a
basis would indeed 'invert the burden of proof and foist upon plaintiff' the burden of
challenging a redaction or withholding; such a burden remains squarely on the agency.
Otherwise, '[a]n agency could require a requester who is otherwise entitled to a fee
waiver to make payment even before the agency's claimed exemption has been tested in
court,' a result which could seriously deter requesters 'from testing the bounds of the
FOIA exemptions.'" *Southern Utah Wilderness Alliance v. Bureau of Land
Management*, 402 F. Supp. 2d 82, 90 (D.D.C. 2005) (citations omitted).

As another court stated, "Defendant cannot be permitted to deny plaintiff a fee
waiver because, in theory, defendant has the ability to raise certain FOIA exemptions. It
is unfair and contrary to the spirit of the FOIA to deny a financially limited requester ... a
fee waiver based on an agency determination that is speculative and unreviewable.
Clearly, permitting such a result would undermine the very rationale of the fee waiver
provisions and this Court's ability to review FOIA determinations made by the
defendant." *Project on Military Procurement v. Department of Navy*, 710 F. Supp. 362,
368 (D.D.C. 1989).

To the extent Department of Homeland Security regulations condition a fee
waiver on the substance of the records that may be disclosed, *see* 6 C.F.R. § 5.11(k)(2),
the regulations are contrary to the Freedom of Information Act. Courts do "not defer to
an agency's view of FOIA's meaning." *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C.
Cir. 1997). Therefore, the Department of Defense is entitled to no deference on this
point.

On the merits, the public interest fee waiver provision of FOIA contained in 5
U.S.C. § 552(a)(4)(A)(iii) "is to be liberally construed in favor of waivers for
noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835
F.2d 1282, 1284 (9th Cir. 1987); *see also Rossotti*, 326 F.3d at 1312 (same). The Request
specified that the requestor is a non-profit group and disclosure is not in their commercial
interest and is not sought for commercial purposes. The Response does not dispute that
issue.

Freedom of Information Appeal
March 8, 2010
Page 6 of 6

     Ms. Pavlik-Keenan did not dispute that the Request seeks information likely to contribute significantly to public understanding of the operations or activities of the government. To recap briefly, the Request seeks documents pertaining to a massive enforcement operation conducted by ICE across California. The public has an overwhelming interest in learning how the government is enforcing its immigration laws. Not only does the public have an interest whether immigration agencies are actually doing what they claim to be doing, but the public also has an interest in knowing whether that enforcement is impinging upon fundamental rights or is otherwise at odds with American values.

     For the foregoing reasons, the denial of our request for expedited processing should be overturned and a determination on our request for fee waivers should be made on the face of the Request.

     Sincerely,

Sean Riordan
Staff Attorney

ORIGINAL

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

**DEFENDANTS** 2010 MAR 15 PM 2: 17

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

BY: ___ DEPUTY

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
ACLU Foundation of San Diego & Imperial Counties, Sean Riordan
P.O. Box 87131; San Diego, CA 92138  (619) 398-4485

Attorneys (If Known)

'10 CV 0544 BEN      WVG

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 5 U.S.C. 3552

Brief description of cause: Failure to comply with Freedom of Information Act

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE ___
DOCKET NUMBER ___

DATE 3/15/10
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 11159   AMOUNT $350   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

TB 03-15-10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS011159
Cashier ID: mbain
Transaction Date: 03/15/2010
Payer Name: ACLU
---------------------------------
CIVIL FILING FEE
 For: ACLU
 Case/Party: D-CAS-3-10-CV-000544-001
 Amount:        $350.00
---------------------------------
CHECK
 Check/Money Order Num: 12589
 Amt Tendered:  $350.00
---------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```